Jack ZACKEY, Plaintiff,

v.

AMERICAN EXPORT LINES, Inc., Defendant.

United States District Court
S. D. New York.
July 3, 1957.

Jacob Rassner, New York City, by Ernest Rassner, New York City, of counsel, for plaintiff.

Haight, Gardner, Poor & Havens, New York City, by Walter A. Darby, and Stephen K. Carr, New York City, of counsel, for defendant.

EDELSTEIN, District Judge.

### Findings of Fact

1. As of June 1953, prior to plaintiff's employment aboard the s/s Constitution, an examination by the ship's doctor revealed that plaintiff had only 9 teeth remaining in his mouth out of a possible full set of 32.

2. On or about May 15, 1953, the plaintiff's family physician, Dr. DeChesney, advised the plaintiff that he should be hospitalized for one month to eliminate a possible peptic ulcer condition and that he would be unfit for duty for three months.

**3.** On June 12, 1953, the plaintiff underwent a physical examination prior to employment aboard the s/s Constitution, but withheld the fact that on May 15, 1953, he had been declared unfit for duty for three months because of a suspected peptic ulcer condition.

**4.** On June 12, 1953, plaintiff signed articles aboard the s/s Constitution, in a Deck Maintenance rating, and the s/s Constitution sailed from New York on June 13, 1953, on a Mediterranean run.

**5.** On June 14, 1953, plaintiff complained to the Assistant Ship's Surgeon, Dr. Christiensen, that he had a pain in the epigastric region of three days' duration, for which he was treated.

**6.** Such epigastric pain of three days' duration reported on June 14, 1953, predated plaintiff's signing on the s/s Constitution.

**7.** On June 16, 1953, plaintiff again complained to Dr. Christiensen of epigastric pain and received treatment for the condition.

**8.** On June 18, 1953, plaintiff complained to Dr. Christiensen of a toothache and was treated for the condition.

**9.** On June 19, 1953, plaintiff complained of palpitation in the chest and was examined by Dr. Christiensen, who found no abnormal symptoms other than a rapid heart beat.

**10.** On June 21, 1953, plaintiff complained of a painful lower front tooth and requested a letter to authorize a visit to a shoreside dentist. Plaintiff was referred to the Ship's Chief Surgeon, Dr. Alspach.

**11.** On June 22, 1953, Dr. Alspach extracted a left front tooth of plaintiff and prescribed after-treatment for the oral surgery.

**12.** On June 27, 1957, plaintiff requested and received a refill of his prescription for post-extraction therapy.

**13.** On June 28, 1957, plaintiff was admitted to the crew hospital for mental observation and was taken off duty.

**14.** On June 29, 1957, plaintiff complained to Dr. Christiensen of a nightmare, and sedatives were administered.

**15.** On July 2, 1953, American Export Lines, Inc., the defendant, transported the plaintiff by ambulance to the United States Marine Hospital, Stapleton, Staten Island, New York, but plaintiff upon arrival refused the offer of these facilities and proceeded without notice to Philadelphia, Pennsylvania.

**16.** Thereafter, plaintiff did not report back to the United States Marine Hospital in Staten Island, New York, for treatment, although the hospital was in easy proximity from his place of residence in Hoboken, New Jersey, nor did plaintiff report to any U. S. Public Health Service Facility for treatment, where such treatment was available free of charge to plaintiff.

**17.** By letter dated July 7, 1953, plaintiff advised Stockard Steamship Company that he was looking for work and by this letter it is reasonable to assume that plaintiff considered himself physically fit for duty.

**18.** Plaintiff did obtain the services of a doctor in New Jersey in July and August 1953, but the nature of plaintiff's ailment at that time and the nature of plaintiff's treatment are unknown.

**19.** In October, 1952, while employed by Grace Line aboard the s/s Santa Paula, plaintiff had sustained a similar psychic episode as that experienced aboard the s/s Constitution.

**20.** Plaintiff's expert witness, Dr. Denker, testified that a psychic episode, such as plaintiff underwent, can be precipitated by severe pain of any sort.

**21.** Plaintiff's personal physician, Dr. DeChesney, testified that as of May 15, 1953, prior to signing on the s/s Constitution, plaintiff had complained of severe constant epigastric pain.

Conclusions of Law on the Cause of Action for Negligence

**1.** Defendant is not liable under the Jones Act, 46 U.S.C.A. § 688, because plaintiff has failed to prove that the ship's surgeon was guilty of malpractice. De Zon v. American President Lines, 318 U.S. 660, 63 S.Ct. 814, 87 L. Ed. 1065.

2. The ship's surgeon is not liable for errors in judgment since he brought to his treatment the skill and care ordinarily exercised by his professional brethren. Graham v. Alcoa S. S. Co., 3 Cir., 201 F.2d 423.

3. Even had defendant failed to provide adequate treatment or had the surgeon been guilty of malpractice, plaintiff has failed to prove that the alleged negligence was the proximate cause of plaintiff's condition.

4. The plaintiff has failed to carry the burden of proof in establishing the negligence of the shipowner by a preponderance of the evidence.

5. This cause of action is dismissed.

### Conclusions of Law on the Cause of Action for Maintenance and Cure

1. That the plaintiff wilfully failed to inform the defendant shipowner of a disabling condition at the time of his pre-employment physical examination and therefore the defendant is not liable to pay maintenance when such condition manifested itself or could have been the cause of a further disabling condition. Tawada v. United States, 9 Cir., 162 F.2d 615.

2. The facilities of the United States Public Health Services having been made available to the plaintiff by the defendant and such facilities having ben rejected by the plaintiff, the defendant shipowner is not liable for maintenance and cure. Murphy v. American Barge Line, 3 Cir., 169 F.2d 61; The Saguache, 2 Cir., 112 F.2d 482; Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993.

3. An offer of hospital services is a fulfillment of the shipowner's obligation to furnish maintenance and cure. This was done by the defendant and rejected by the plaintiff and therefore the defendant is not liable for maintenance and cure. Murphy v. American Barge Line, 3 Cir., 169 F.2d 61; United States v. Johnson, 9 Cir., 160 F.2d 789; Stokes v. United States, D.C., 55 F.Supp. 56, af-

firmed 2 Cir., 144 F.2d 82; Wilson v. United States, 2 Cir., 229 F.2d 277, 281.

4. In any event plaintiff would not be entitled to maintenance and cure unless he has shown that he has undergone treatment calculated to improve his condition and this he has failed to show.

5. The second cause of action is dismissed.