**Theresa Gail SMITH, Plaintiff,**

v.

**APEX TOWING COMPANY, Defendant.**

No. 96 C 2255.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 8, 1997.

Thomas F. Colbert, Chicago, IL, Scott Carlton Sands, Sands & Associates, Chicago, IL, for plaintiff.

Dion Joseph Sartorio, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, John R. Halpern, Daryl F. Sohn, Goldstein & Price, St. Louis, MO, for defendant.

## *MEMORANDUM OPINION AND ORDER*

GETTLEMAN, District Judge.

Plaintiff Theresa Gail Smith filed a three count complaint against Defendant Apex Towing Company. In Count I, Plaintiff alleges under the Jones Act injuries resulting from Defendant's negligence. In Count II, she alleges unseaworthiness under General Maritime Law. In Count III, Plaintiff seeks maintenance and cure under General Maritime Law. Plaintiff has filed a motion for partial summary judgment for maintenance and cure. Defendant argues that summary judgment should be denied because genuine issues of material fact exist regarding Defendant's affirmative defense. For the reasons stated below, plaintiff's motion is denied.

### FACTS

Plaintiff was employed by Defendant as a cook aboard the towboat DEWEY R on November 1, 1995, while the boat was on navigable waters of the Illinois River. At defendant's request, plaintiff underwent a pre-

employment physical examination. The results of a lumbar spine x-ray examination reported: "No fracture, subluxation or significant arthritic change. Class I spine." On a health history form completed by plaintiff, she indicated that she had no history of "any back injuries or problems."

Larry Branch, a junior engineer employed by defendant aboard the DEWEY R on November 1, 1995, states in his affidavit that a few days prior to that date he provided plaintiff with a milk crate and an unsecured piece of plywood for her to stand on in order to work in the galley and to use the mirror in her quarters. Defendant denies that Branch provided plaintiff with this makeshift step stool, but has failed to provide any evidence tending to show that Branch's affidavit is false.

Plaintiff states in her affidavit that on November 1, 1995, she fell on her back while standing on the makeshift step stool in her quarters. The fall apparently was not witnessed. Larry Branch states that prior to November 1, 1995, Plaintiff appeared to be in good health and displayed no indication of back problems, but after that date she complained of and appeared to be in pain. Defendant denies that plaintiff fell, but has failed to provide any evidence tending to show that the fall did not occur. The Vessel's Daily Log for November 1, 1995, contains the following entry: "Gail Smith fell down and bruised her tail bone." Plaintiff continued working on the DEWEY R until December 5, 1995.

Plaintiff sought treatment for low back pain on January 18, 1996. A CT scan of Plaintiff's lower back on January 31, 1996, showed a bulging disc at L 4–5. On February 29, 1996, Plaintiff had surgery to remove herniated intervertebral discs. Plaintiff states that because of poor results with the first surgery, she had a second surgery, a spinal fusion, on July 17, 1996. Plaintiff's counsel submits his itemized summary of Plaintiff's unpaid medical expenses totaling $30,404.86. Defendant denies that Plaintiff has unpaid medical expenses totaling $30,-404.86, but has failed to provide any evidence tending to show otherwise.

Plaintiff states in her affidavit that she has been unable to work since leaving the DEWEY R on December 5, 1995. Defendant denies that plaintiff has been unable to work, but has failed to provide any evidence tending to show otherwise.

Defendant claims that plaintiff concealed a pre-existing problem with her lower back. Defendant alleges that plaintiff sought emergency medical treatment for "severe back pain" under the name of Theresa Gail Posey in June 1988 at Laird Hospital in Union, Mississippi, and provides a hospital emergency room record to support this allegation. The date of birth on the hospital record matches plaintiff's date of birth. Defendant alleges that the signature "Gail" on the hospital record matches Plaintiff's signature "Gail" on her 1993 driver's license. Plaintiff denies that she received emergency treatment under the name of Theresa Gail Posey in 1988. Plaintiff states that she divorced Robert Posey in 1980 and that in June 1988 she went by the name of Theresa Gail Beckham. Plaintiff states that she never lived at the address shown on the hospital record and that the social security number does not match her social security number. Plaintiff states that she has never used the social security number appearing on the hospital record. Plaintiff states that neither she nor Robert Posey ever worked for the employer identified on the hospital record. Plaintiff denies that the signature on the Laird Hospital record is hers. Plaintiff was treated at Laird Hospital for knee pain under the name of Gail Beckham in June 1987.

Defendant submits testimony from Paul Johnson, President of Tennessee River Towing, Inc., who hired plaintiff in May 1994 as a cook for a towboat belonging to his company. Johnson testified that plaintiff told him that she had back problems. Plaintiff denies that she told Johnson that she had any back problems. Johnson also testified that plaintiff's alleged back problems did not interfere with his decision to hire her as a cook.

In January 1995, plaintiff sought emergency medical treatment at Laird Hospital because she purportedly fell down a flight of stairs and luggage hit her in the head and back. The admitting diagnosis and dis-

charge diagnosis recorded that plaintiff suffered, among other injuries, "low back strain." The treating physician ordered x-rays of plaintiff's cervical spine and thoracic spine, but not her lumbar spine. The physician stated that she did not order a lumbar spine x-ray because she had no reason to believe at the time that there was any abnormality or injury to plaintiff's lumbar spine. The treating physician did not place special restrictions on plaintiff's activities when she was discharged.

## DISCUSSION

Under Fed.R.Civ.P. 56(c), a court should grant a summary judgment motion if "there is no genuine issue of material fact 'and ... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of a genuine issue of material fact. *Id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). When reviewing a summary judgment motion, the court must read the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir.1994).

■■■ "Cure and maintenance are rights given to seamen as incidents of their employment." *Mullen v. Fitz Simons & Connell Dredge & Dock Co.,* 191 F.2d 82, 85 (7th Cir.), *cert. denied,* 342 U.S. 888, 72 S.Ct. 173, 96 L.Ed. 666 (1951) (citing *The Osceola,* 189 U.S. 158, 172, 23 S.Ct. 483, 485–86, 47 L.Ed. 760 (1903)). "Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery." *Vaughan v. Atkinson,* 369 U.S. 527, 531, 82 S.Ct. 997, 1000, 8 L.Ed.2d 88 (1962). "Cure means medical care and attention, and maintenance means subsistence during disability." *Mullen,* 191 F.2d at 85. "Maintenance is a per diem living allowance, paid so long as the seaman is outside the hospital and has not reached the point of 'maximum cure.' Cure involves the payment of therapeutic, medical, and hospital expenses, again, until the point of 'maximum cure.'" *Pelotto v. L & N Towing Co.,* 604 F.2d 396, 399 (5th Cir.1979). "The amount of maintenance to which an injured seaman is entitled is a question of fact." *Caulfield v. AC & D Marine, Inc.,* 633 F.2d 1129, 1132 (5th Cir.1981). "The seaman's own testimony as to his expenses is competent, probative evidence of the amount of maintenance due." *Id.*

■■■ The shipowner's liability for maintenance and cure is pervasive and is not to be narrowly confined. *Vaughan,* 369 U.S. at 532, 82 S.Ct. at 1000–1001. "A shipowner must pay maintenance and cure for any illness or injury which occurred, was aggravated, or manifested itself while the seaman was in the ship's service." *Stevens v. McGinnis,* 82 F.3d 1353, 1357–58 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S. Ct. 433, 136 L.Ed.2d 331 (1996) (citing Martin J. Norris, *The Law of Seamen* § 26:21 (1985)); *see also McCorpen v. Central Gulf S.S. Corp.,* 396 F.2d 547, 548 (5th Cir.), *cert. denied,* 393 U.S. 894, 89 S.Ct. 223, 21 L.Ed.2d 175 (1968). "Maintenance and cure is payable even though the shipowner is not at fault, and regardless of whether the seaman's employment caused the injury or illness." *Stevens,* 82 F.3d at 1357 (citing *Calmar S.S. Corp. v. Taylor,* 303 U.S. 525, 527, 58 S.Ct. 651, 652–53, 82 L.Ed. 993 (1938)). A plaintiff need not prove negligence to establish a claim for maintenance and cure because the obligations are contractual. *Sulentich v. Interlake Steamship Co.,* 257 F.2d 316, 320 (7th Cir.) *cert. denied,* 358 U.S. 885, 79 S.Ct. 125, 3 L.Ed.2d 113 (1958); *Mullen,* 191 F.2d at 85; *Wactor v. Spartan Transportation Corp.,* 27 F.3d 347, 352 (8th Cir.1994). Ambiguities and doubts are to be resolved in favor of the

seaman. *Vaughan,* 369 U.S. at 532, 82 S.Ct. at 1000–1001.

■ Plaintiff argues that she is entitled to maintenance and cure because of injuries sustained while in service aboard Defendant's vessel. Whether plaintiff initially injured her back on board the DEWEY R or only aggravated an existing injury is irrelevant to the inquiry of whether defendant is liable to pay maintenance and cure. *See Stevens,* 82 F.3d at 1357–58; *McCorpen,* 396 F.2d at 549. Plaintiff presents evidence regarding her medical and living expenses and states that she has been unable to work due to her injuries.

Defendant raises the affirmative defense that plaintiff forfeits maintenance and cure because she intentionally failed to disclose material information concerning her history of back problems on the health history form she submitted for her pre-employment physical examination. Defendant argues that it desired and actively sought disclosure of back problems, and would not have hired her if the alleged pre-existing problem had been disclosed.

■ Although the seaman's right to maintenance and cure is broad, it is "subject to a few narrow exceptions." *Wactor,* 27 F.3d at 352. "Where the seaman is required to provide pre-employment medical information and 'the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure,' if the injury incurred on the employer's vessel is causally linked to the concealed medical condition." *Id.* (quoting *McCorpen,* 396 F.2d at 549). A defendant must prove by a preponderance of the evidence each of the following elements: the seaman "knowingly misrepresented to or concealed from the examining physician the facts concerning" a prior injury; "such misrepresentation or concealment was material; it was relied upon by the defendant; and [the seaman] would not have been permitted to continue to work and remain aboard the vessel if the true state of facts had been disclosed." *Sulentich,* 257 F.2d at 320; see also *Wactor,* 27 F.3d at 352; *McCorpen,* 396 F.2d at 549; *Evans v. Blidberg Rothchild Co.,* 382

F.2d 637, 639–40 (4th Cir.1967); *Burkert v. Weyerhaeuser Steamship Co.,* 350 F.2d 826, 829 n. 4 (9th Cir.1965).

■ "Nondisclosure of a pre-existing injury, without more, will not result in a seaman's loss of maintenance and cure. Such a forfeiture will not occur unless [the seaman] intentionally misrepresented or concealed medical facts that were material to the decision to hire him." *Deisler v. McCormack Aggregates, Co.,* 54 F.3d 1074, 1080 (3rd Cir. 1995). "Given the historical importance of a seaman's claim for maintenance and cure, it should not be lost unless the employee's purportedly wrongful conduct was material to an employer's hiring decision." *Id.* at 1081.

■ Plaintiff argues that Defendant has failed to carry its burden of proving its affirmative defense. Plaintiff argues that she did not intentionally misrepresent a history of back problems on Defendant's medical form because she denies that she had a prior history of low back pain. Plaintiff denies that she was treated for back pain under the name of Theresa Gail Posey and denies that she told Paul Johnson that she had back problems. She claims that her treatment in 1995 for a back injury was not for low back pain or injury. Although plaintiff's physician apparently did not treat plaintiff for low back injury, the admitting and discharge notes for plaintiff clearly indicate "low back strain." This evidence creates at least an issue of material fact regarding whether plaintiff had a prior history of low back pain.

Plaintiff next argues that even if she did fail to disclose a history of back problems, she is not foreclosed from receiving maintenance and cure because she had a good faith belief that the medical condition was not relevant to her employment and would not prevent her from performing her duties as a cook. Plaintiff relies on the rule in the Second Circuit: a seaman is denied maintenance and cure for concealing a pre-existing medical condition only if he knew or should have known that the condition is relevant to his employment. *Deisler,* 54 F.3d at 1081; *Sammon v. Central Gulf Steamship Corp.,* 442 F.2d 1028, 1029 (2nd Cir.), *cert. denied,* 404 U.S. 881, 92 S.Ct. 202, 30 L.Ed.2d 162 (1971).

Plaintiff has not presented any case to establish that this rule has been adopted in this circuit, but even if it has, a question of fact remains as to what plaintiff knew at the time she applied for the job.

Plaintiff also argues that defendant has not provided evidence demonstrating that the information of alleged prior back injuries was material, that defendant relied upon this information, or that she would not have been hired had defendant known about the alleged prior back problems. Plaintiff argues that here, unlike in *Sulentich,* the examining physician did not state that he would have considered the allegedly concealed information to be material or would have refused to approve Plaintiff for service as a cook had he known about the alleged prior back problems. In response to this argument, defendant offers the deposition of Dr. Joseph Bonck, the examining physician. Dr. Bonck testified that had he known of the alleged pre-existing condition he would have performed a more complete examination, and recommended that plaintiff not perform any heavy lifting (over 25 pounds), repetitive lifting, and only occasional bending. Defendant also presented the affidavit of Cathy Otts, defendant's dispatcher in 1995, in which she stated that based on Dr. Bonck's testimony, she would not have hired plaintiff because plaintiff would not have been able to perform the job. This testimony creates an issue of fact that cannot be decided on summary judgment.

Moreover, the court can presume the materiality of, and Defendant's reliance on, the information regarding plaintiff's alleged prior back injuries because the information was specifically requested on defendant's health form. In *Deisler,* the Third Circuit rejected a presumption of materiality and reliance where the seaman failed to answer a single general question regarding any past illnesses or injuries on a standard employment application. 54 F.3d at 1081–82. The shipowner had failed to investigate the seaman's omission and the shipowner had never signed or initialed the form in the "Reviewed By" or "Approved By" sections. *Id.* The Third Circuit went on to state (at 1082):

But there may be situations where courts should presume such reliance. For instance, if a shipowner requires a prospective applicant to submit to a physical examination and/or to fill out a detailed medical history form, the extent to which the employer will be required to submit affirmative proof of reliance should be diminished. It is not that reliance is no longer required; rather, it is that the employer will there have demonstrated reliance by adopting a particular procedure or form.

Here, defendant required plaintiff to submit to a physical examination and to fill out a detailed medical history form. Plaintiff checked "NO" for "ANY BACK INJURIES OR PROBLEMS" on the "HEALTH HISTORY" form.

Regarding materiality and reliance, plaintiff points to the testimony of Paul Johnson, another towboat owner, submitted by defendant, indicating that plaintiff's alleged prior back injuries did not interfere with his decision to hire plaintiff as a cook. However, Johnson is not the defendant in this case, and differing policies create differing inferences of materiality and reliance. Johnson did not require Plaintiff to submit to a pre-employment physical. Defendant's policy of requiring plaintiff to submit to a physical examination and to fill out a detailed medical history form creates at least an issue of fact of whether the information was material, whether defendant relied upon the information, and whether it would have been a factor in its decision to hire plaintiff.

## CONCLUSION

Because issues of material fact exist regarding defendant's affirmative defense, plaintiff's motion for partial summary judgment for maintenance and cure is denied.